## Spradlin v. Williamson.

May 23, 1944.

J. W. Thompson for appellant.

W. R. McCoy, Sr. for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

F. M. Spradlin instituted this action to quiet title to part of a small tract of land which he purchased in January, 1919. The appeal is from a judgment holding "there is no conflict between calls in the deeds of boundary lines of the respective parties hereto" and dismissing the appellant's petition.

The appellant's deed called for a tract of land in Johnson County, Kentucky. From the beginning corner the line ran "to a chestnut and rock on the Martin County line; thence through the Gap back to the George Glaspy line, * * *" and then continued with various calls to the beginning point. Several months after the execution of the appellant's deed M. C. Dingus, who was the common grantor of both the appellant and the appellee, conveyed a tract of land about the size of the one conveyed to the appellant to the appellee. The deed purported to convey to him all of the land owned by Dingus in that vicinity in Martin County. The beginning corner of the deed was "a chestnut and rock on the Martin and Johnson County lines." The last call of the deed was from a gum and

rock on a knob east of Smith Gap, "thence through the Smith Gap to the beginning." It is to be noted that the southern boundary of the appellant's land and the northern boundary of the appellee's land call for a line beginning at a chestnut and rock on the Martin and Johnson County line, and running eastwardly through the Gap. Obviously, Dingus was intending to convey the part of his tract lying in Johnson County to the appellant and the part lying in Martin County to the appellee, and his testimony bears this out in so far as the appellant's tract is concerned. The Gap referred to is located on a rather flat ridge, which is the dividing line between the water sheds of Rock House Creek and Jim Williamson Branch. The act creating Martin County sets forth that this ridge is the dividing line between Martin and Johnson counties at this point. However, an old survey made by Shade West placed the county line to the southern side of the ridge, one call being the chestnut and rock referred to in the aforementioned deeds.

Apparently, the southern boundary line contended for by the appellant would place in dispute the title to some five acres of land south of the aforementioned ridge. The appellee claims the center of the ridge is the boundary line between the two counties and he contends his boundary includes all of the land formerly owned by Dingus which was located in this vicinity in Martin County. As heretofore noted, the judgment did not fix formally the boundary line between the two counties, but merely held there was no conflict in the calls of the two deeds.

In addition to denying he set up any claim to a part of the land described as belonging to the appellant, the appellee set forth that his boundary extended to the Martin County line, and in no way conflicted with the appellant's title; that the county line was the boundary between the two tracts; and that he had been "in the actual, adverse, open, notorious, peaceable, quiet and uninterrupted possession of the boundary of land which he claims in Martin County and which binds on the Martin-Johnson line for more than fifteen whole years claiming, and exercising ownership over the same to a well defined boundary and that said land or the greater part thereof is under fence and has been for many years, which facts are now pled and relied as a

complete bar to plaintiff's right of recovery herein.'' There was no reply or traverse to the plea of adverse possession.

The appellee testified most of the boundary claimed by him had been fenced ever since he purchased and took possession of it; he had always claimed to the center of the ridge; he did not know the appellant made any claim to the land on the southern side of the ridge until shortly before the suit was filed; when the appellant built a house at or near the Gap he asked his permission to place it near the line so he could send his children to school; when the house was built, part of it was on the Martin County side; and more than 15 years ago he rented the land in dispute to the appellant and had since rented it to him. Several witnesses who knew the land and both of the parties gave evidence in support of that of the appellee. Of course the testimony of the appellant was contrary to that for the appellee. He said the land in dispute had always been in his possession. His explanation of the rental question was that the land which he rented from the appellee was other than the part in dispute.

We are of the opinion the chancellor properly ruled the appellant was not entitled to the relief which he sought. As heretofore indicated, we think it is quite clear that Dingus intended to convey to the appellant the part of his lands lying in Johnson County and to appellee the part lying in Martin County, but, regardless of whether he did or he did not, we believe the record supports the conclusion that the appellee took possession of all the Dingus land on the southern side of the dividing ridge referred to in the act creating Martin County, and the appellant recognized this holding.

Under the circumstances, we believe the judgment should be affirmed.